## PATTERSON v GARRISON

Ohio Appeals, 2nd Dist, Montgomery Co

No 1441. Decided March 9, 1937

McMahon, Corwin, Landis & Markham, Dayton, for plaintiff-appellee.

Marshall & Harlan, Dayton, for defendant-appellant.

## OPINION

### By HORNBECK, J.

This is an appeal on questions of law from a judgment for the plaintiff in the sum of $2500.00.

The cause of action, consisting of four specifications was based upon the wanton misconduct of the defendant in the operation of his Oldsmobile Sedan, resulting in a collision of the automobile with a tree, causing personal injuries to the plaintiff. Issues were drawn upon the specifications of wanton misconduct of the defendant and as to the extent of the injuries claimed by plaintiff. At the conclusion of the plaintiff's case in chief and at the conclusion of the whole case defendant moved for a judgment. After the verdict motion for new trial was interposed and a motion for judgment non obstante veredicto, the motions for judgment all being based upon the proposition that the evidence in the case failed to prove wanton misconduct on the part of the defendant. All of these motions were overruled and judgment entered on the verdict.

There are five assignments of error presented in the brief of appellant two of which, the first and second, relate to the failure of the court to sustain the motions for directed verdict and for judgment non obstante veredicto. The **third** is: "Error of the court in its general charge to the jury." **Fourth**: "Error in overruling a motion of the defendant for new trial." And **Fifth**: "The verdict is against and contrary to the weight of the evidence and the law of the case."

Although the petition originally charged wilful and wanton misconduct against the defendant, on the day of the trial the charge of wilful misconduct was withdrawn.

The first two grounds of error are predicated upon the application of §6308-6 GC, known as the "Guest Statute" to the facts developed in the evidence. This section reads:

"The owner, operator or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest while being transported without payment therefor in or upon said motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wilful or wanton misconduct of such operator, owner or person responsible for the operation of said motor vehicle."

The plaintiff, a minor of about sixteen years of age, was, at the time of the collision in which she was injured, riding as a guest in the automobile of her uncle, Henry Garrison, the defendant. On the morning in question, December 10, 1933, the defendant, together with his brother, came to the home of the plaintiff on Rogge Street in South Park, Dayton, Ohio and defendant invited her to go with him to Miamisburg. She got into the back seat of the car, her uncles riding in the front seat. At the time that she entered the car a sleety snow was falling. They moved through several streets for a distance of approximately one mile, during which time it snowed harder. As they approached Springboro Pike the defendant got out and wiped off his windshield with a rag and invited the plaintiff to come into the front seat with him, her other uncle having left the car prior to that time. They proceeded to a bridge over the Great Miami River, which connected on the north with a street known as South Broadway in the City of Dayton. Before they went onto the bridge the defendant again got out of his car and wiped the freezing snow from his windshield. At this time the plaintiff requested the defendant to take her home, stat-

ing that she was scared, whereupon he told her not to be silly. It was then 9:00 o'clock in the morning and the defendant had an appointment in Miamisburg for that hour. They then proceeded at a speed of 35 to 40 miles per hour toward Miamisburg on the Springboro Pike and after they had travelled approximately one and a half miles defendant's car skidded, turned completely around in the road and when it stopped was headed in the opposite direction from which they had theretofore been moving. The right door was torn from the car and both plaintiff and defendant were thrown therefrom. The plaintiff suffered injuries. The statement of facts thus far set forth is undisputed.

There were but two witnesses to the occurrences prior to and attending the collision, the plaintiff and defendant, both of whom testified. They are at variance in their statements on questions material to the right of the plaintiff to recover. The jury, however, could properly have found, under the evidence, further facts, namely, that the road became icy and slippery soon after they left plaintiff's home and that the condition grew worse as they progressed; that the snow had accumulated on the windshield after they had left the bridge, so that the plaintiff could not see through it; that although the plaintiff got out and wiped the snow from his windshield twice before they had reached the bridge, he did not again leave the car for that purpose; that the car had been slipping or skidding on the street before they reached the bridge; that this was the reason for the plaintiff's fright, of which she complained; that defendant was late for his appointment and that as he proceeded toward Miamisburg the car continued to slide from side to side on the road frequently and almost continuously; that while so moving on its right side of the road it skidded with the result heretofore stated.

The jury could have found that all of these conditions of weather, slippery road, skidding automobile, clouded windshield and speed of the car were known to the defendant and presented a hazard which would in all probability result in injury to the plaintiff. This constitutes the elements of wanton misconduct as set forth in the second syllabus of Universal Concrete Pipe Co. v Bassett, 130 Oh St 567.

Inasmuch as the verdict of the jury must have been predicated upon the acceptance of the testimony of the plaintiff as against that of the defendant, we cannot say that the verdict is contrary to or against the weight of the eivdence.

The defendant urges that at most the proof establishes negligence. The jury could have found that the defendant was negligent only, but it had the right to indulge the further inference, namely, that the acts of the defendant, under all the circumstances, constituted wanton misconduct.

In the case of Mays v Minnich, 19 Abs 516, motion to certify overruled in Ohio Bar, September 30, 1935, we reviewed a judgment for the plaintiff predicated upon a cause of action charging wanton misconduct against the defendant. The jury had answered one of the special interrogatories to the effect that the defendant's negligence was the proximate cause of the injury of which complaint was made. We held that although the facts averred might alone or in combination have constituted negligence, if they were aggravated by wanton misconduct they were negligent notwithstanding. We adverted to the distinction made between wilful tort and wanton misconduct in Denzer v Terpstra, 129 Oh St 1, and said:

"Although this distinction must be accepted, it does not go so far as to say that negligence * * *. and wanton misconduct cannot both exist in the same set of facts."

The Guest Statute was enacted with the benefit of judicial determination of the terms wilful and wanton misconduct, though wanton misconduct was sometimes characterized as wanton negligence. Payne, Director General v Vance, 103 Oh St 59; Higbee Company v Jackson, 101 Oh St 75; Reserve Trucking Co. v Fairchild, 128 Oh St 519; Denzer v Terpstra, supra. Since the effective date of the Guest Statute the Supreme Court has said much about wilful and wanton misconduct and carefully made differentiation between them and between misconduct and negligence in any form. The result has been that new and in instances somewhat different meaning has been read into these terms. Universal Concrete Pipe Co. v Bassett, supra; Veechio v Veechio, 131 Oh St 59.

In modifying the third paragraph of the syllabus of Higbee Co. v Jackson, supra, and the second syllabus of Reserve Trucking Co. v Fairchild, supra, and re-stating the elements of wanton misconduct, Pipe Co. v Bassett, supra, it appears to us that the necessity of establishing failure of any care is omitted as an essenial. Whether

or not this is the fact, in Reserve Trucking Co. v Fairchild the court held that the case should have gone to the jury on the facts, although approving and announcing that "failure to exercise any care," second syllabus, was an element of wanton negligence. Though the court there employed a "misnomer, pure and simple" in the use of the term "wanton negligence" (Pipe Co. v Bassett, supra) it clearly was defining what the court in the later case defined as "wanton misconduct."

These technical distinctions are not new and have been the subject of discussion by courts and text book writers for many years. Most of the texts now note the difference but state that its practical application is quite difficult. It is obvious that there has been quite a turning about by the members of the Supreme Court in their view of the elements of wilful tort and wanton misconduct.

Note this language of Judge Marshall in the opinion of Payne, Director v Vance, supra, page 69:

"A wilful tort, according to the definition above quoted, can only be predicated upon knowledge of danger, with reckless disregard of the consequences after discovering the danger. It is of course not necessary that the defendant should have knowledge of the peril of any particular person, or that he should have intended to do injury to some particular person, but, on the other hand, any general knowledge or information that other persons are placed in a position of peril by his reckless and heedless conduct would amount to a legal wilful tort. This doctrine is based upon the well-known principle that a person is presumed to intend the natural and logical consequences of his acts." See also 47 C. J. 674.

This definition of wilful tort has now, in substance, been employed to define wanton misconduct.

It would be interesting to discuss some of the developments heretofore mentioned and suggest some of the practical difficulties that are just around the corner for trial judges. However, such consideration would be of little or no help in this case, as the law controlling is set forth in the second syllabus of U. C. Pipe Co. v Bassett, supra, which has not been modified nor reversed.

In Thomas v Foody, Madison County, unreported, motion to certify overruled, Ohio Bar, February 1, 1937, (24 Abs 108)

a judgment grounded upon a charge of wanton misconduct was under consideration and supported in this court. The facts presented were at least analagous to those in the instant case. In the Thomas case the speed was greater, there were known curves in the road, it was in the night season but the road in probability was not as slippery, there was not the premonitory skidding and the vision of the driver was not impaired, as in the instant case.

In the instant case the plaintiff relied upon averments of wanton misconduct, produced facts supporting these allegations and in our judgment brought them in their most favorable interpretation squarely within the law as announced in U. C. Pipe Co. v Bassett, supra.

Complaint is made of this portion of the charge:

"If the person's conscious conduct is such as to involve a high degree of chance that serious harm will result from it to any one who is within the range to know that others are within such range, is conclusive of the wantonness of his conduct toward them."

The language complained of is general and in view of the more specific terms in which wanton misconduct was properly defined to the jury we are of opinion that that part of the charge objected to was not prejudicially erroneous to the defendant.

We have examined all the other claimed errors and find none which would require a reversal of the judgment. We have also considered the cases cited by counsel and are familiar with most of them because of the fact that we have recently considered several cases involving construction of the guest statute.

Judgment affirmed.

GEIGER, J, concurs.
BARNES, PJ, dissents.

## ON APPLICATION FOR REHEARING

Decided March 25, 1937

By THE COURT

Submitted upon application for rehearing.

This application is in the first instance upon the claim that the court has misstated the evidence in certain particulars. We have examined this claim and though we do not concede it, we are satisfied that, if true, there was no misstatement of any fact

which would have such material bearing upon the legal questions presented as to require any different judgment of this court.

It is also urged that we misinterpreted the law of the case. We followed Universal Concrete Pipe Company v Bassett, 130 Oh St 567 and Veechio v Vecchio, 131 Oh St 59, both of which were relied upon by counsel for appellant. We made some observation of the omission to carry into the syllabus of Pipe Co. v Bassett the element of "failure to exercise any care" in defining wanton negligence. We also very carefully indicated that though it were a proper element in establishing wanton misconduct, the facts in the instant case would meet that demand.

Finally, a rehearing is urged because the court divided on the decision in this case and Judge Geiger, who concurred with the writer of the opinion did not sit at the oral presentation of the case. The result is such as may occur in any matter which is presented to the court for determination. We prepared for the eventuality of another judge and secured consent of all counsel for the new member of the court to participate without further oral presentation.

However, if anything of advantage to the parties or the court could in probability result from further consideration of this case on oral argument we would readily re-open it and permit re-argument, but the question is one of law which each member of this court has carefully considered and no advantage would result in granting a rehearing.

The application will be overruled.

HORNBECK and GEIGER, JJ, concur.
BARNES, PJ, concurs in denying the application.